IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GERARDO GARCIA, #R06987**  )<br>)<br>**Plaintiff,**  )<br>)<br>vs.  )<br>)<br>**S.A. GODINEZ, STEPHEN KEIM,**  )<br>**KIMBERLY BUTLER,**  )<br>**HOWARD HARNER, M. SCHEIMAN,**  )<br>**JOHN DOE #1, and JOHN DOE #2,**  )<br>)<br>**Defendants.**  ) | Case No. 15-cv-00530-JPG |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff Gerardo Garcia, an inmate at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. Plaintiff also asserts a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* and an Illinois state law claim under the Illinois Religious Freedom Restoration Act ("IRFRA"). Specifically, Plaintiff alleges that Defendants violated his constitutional and statutory rights when they denied him the ability to freely exercise his religion. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages. The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

28 U.S.C. § 1915A(b).

## The Complaint

In a 29-page complaint (supported by 137 pages of exhibits), Plaintiff asserts multiple claims against the following seven defendants: S.A. Godinez (director of the Illinois Department of Corrections ("IDOC")); John Doe #1[1] (chief of operations at IDOC); Stephen Keim (chief chaplain of all IDOC facilities); Kimberly Butler (assistant warden of programs at Menard); Howard Harner (chief chaplain at Menard); John Doe #2 (chaplain at Menard); and M. Scheiman (IDOC-contracted rabbi at Menard). Plaintiff seeks to sue all Defendants in their individual and official capacities.

The complaint alleges that Defendants have repeatedly violated Plaintiff's right to freely exercise his religion by denying Plaintiff the right to practice his sincerely-held religious beliefs, adopting policies that interfered with that right without any legitimate penological justification, and/or condoning the adoption and enforcement of policies that interfered with Plaintiff's right to freely exercise his religion. The allegations are sufficient to state a claim against each of the Defendants. Therefore, for purposes of the Court's threshold review, the Court will simply highlight the basic and most egregious allegations.

In March 2012, Plaintiff, who was then incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), sought to change his religious affiliation from Hebrew Israelite to Orthodox Jewish. (Doc. 1, ¶ 14). In May 2012, the chaplain at Pinckneyville changed Plaintiff's religious affiliation to Jewish. *Id*. at ¶ 16.

---

[1] Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Plaintiff has sufficiently stated claims against John Doe #1 and John Doe #2 and shall be allowed the opportunity to discover the names of these individuals.

Since April 2012, Plaintiff has, on numerous occasions, requested various accommodations so that he could freely exercise his sincerely held beliefs in accordance with his understanding of Orthodox Judaism. *Id*. at ¶¶ 14-68. His requested accommodations have included a kosher diet, the use of religious items (such as tefillin, kippah, candles, and prayer shawls), and participation in Jewish services. The complaint describes in great detail all of the ways that Plaintiff has tried to learn more about and practice his faith including reaching out to Jewish advocacy and educational organizations.

On June 14, 2013, Plaintiff was transferred from Pinckneyville to Menard. *Id*. at ¶ 32. Two days later, Plaintiff sent a letter to the Menard Chaplaincy Department requesting various accommodations, including a kosher diet and the use of certain religious items. *Id*. at Ex. 37. Shortly thereafter, Defendant Harner (Chaplain) approved Plaintiff's request for a kosher diet. *Id*. at ¶ 35.

Plaintiff's chief complaint since being transferred to Menard is that he has been denied the use of Tefillin. The Illinois Department of Corrections procedural bulletin on Tefillin describes it as "two sealed leather covered boxes that contain several texts of the Torah handwritten on small parchment scrolls" that are affixed to the forehead and arm. *Id*. at Ex. 41. The bulletin recognizes that "Jewish males are required to don Tefillin once daily (except on the Sabbath and certain Holy Days), during the Morning Prayer service." *Id*. Tefillin purchased by inmates are stored in the chaplain's office. According to the June 2013 bulletin, "It is the responsibility of the facility chaplain to insure that Jewish offenders are issued call passes to the chaplain's office . . . to come to the chaplain's office and put on Tefillin." *Id*.

The June 2013 bulletin noted that Jewish offenders are permitted to purchase Tefillin from The Aleph Institute ("Aleph"), a national organization that serves Jewish inmates. *Id*.

Plaintiff attempted to purchase Tefillin from Aleph, in accordance with the IDOC Tefillin bulletin, but his request was denied on the grounds that he is not Jewish. *Id*. at Ex. 41. In a letter to Plaintiff, Aleph explained, "A Jew is someone who was born from a Jewish mother or who has gone through an official Orthodox conversion (outside of a prison setting)." *Id*. The letter concluded, "P.S. in regard to buying tefillin we will not sell anyone who is not Jewish tefillin." *Id*.

Over the next several months, Plaintiff sent requests to Defendants Butler, Harner, and Chaplain John Doe #2 seeking permission to purchase Tefillin and a bag for his Tallith (prayer shawl). *Id*. at ¶ 44. In response to a letter from Plaintiff sent on January 1, 2014 inquiring about the status of his request, Defendant Harner stated, "You may order tefillin, but it cannot be kept in your box." *Id*. at Ex. 53.

Having received permission, Plaintiff's sister ordered Tefillin and had it shipped to Plaintiff, along with a Spanish Torah, and Tallit bag. *Id*. at Exs. 54 and 55. Plaintiff contacted Defendant Harner a few weeks later to find out when he would be able to pray with tefillin. This time Defendant Harner replied, "The procedural bulletin on tefillin requires instructions to have been given by the rabbi." *Id*. at 57 and 58.

Unbeknownst to Plaintiff, IDOC revised the procedural bulletin on tefillin in September 2013 and added a provision stating that only inmates "who have self-declared as being Jewish, and have received instruction for putting on Tefillin from the Jewish Contractual Vendor for the IDOC are eligible to use Tefillin." *Id*. at Ex. 62. However, Defendant Scheiman, the IDOC-contracted rabbi, refused to instruct Plaintiff on tefillin because he did not consider Plaintiff to be Jewish. *Id*. at ¶ 48. He told Plaintiff he could watch, but he would not give him instructions. *Id*. Plaintiff next requested permission to be allowed to use his tefillin without Defendant

Scheiman's instructions, or to be given instructions by another chaplain or rabbi. *Id*. Defendant Harner forwarded Plaintiff's request to the Religious Advisory Board. *Id*.

Plaintiff sent a letter to Defendant Godinez requesting that the procedure on Tefillin be changed or that an accommodation be made for him. Defendant Godinez forwarded this request to Defendant Keim (IDOC Chief Chaplain). *Id*. at ¶ 58. Defendant Keim failed to address Plaintiff's request for an accommodation, and instead simply referred back to the IDOC procedure on Tefillin. In addition, Defendant Butler signed off on a counselor's response to a grievance filed by Plaintiff, which acknowledged that the IDOC procedure prevented Plaintiff from using his tefillin because Defendant Scheiman did not consider him to be Jewish and directed Plaintiff to find out from Defendant Scheiman what documentation was needed to prove he was Jewish. *Id*. at ¶ 64.

On March 27, 2015, the Administrative Review Board denied Plaintiff's request to use Teffillin finding that the "issue was appropriately addressed by the facility Administration." *Id*. at Ex. 112. Among the 112 exhibits attached to the complaint are 13 affidavits from inmates attesting to the sincerity of Plaintiff's religious beliefs. *See id.* at Exs. 94-106.

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court finds it appropriate to reorganize the claims in Plaintiff's *pro se* complaint, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has stated the following constitutional and statutory claims:

**Count 1:** **Defendants violated Plaintiff's right to freely exercise his religion under the Free Exercise and Establishment Clauses of the First Amendment**

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990); *see also Sasnett v. Litscher,* 197 F.3d 290, 292 (7th Cir. 1999); *Al-Alamin v. Gramley,* 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). On the other hand, a prison regulation that infringes on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner,* 482 U.S. at 90; *Al-Alamin,* 926 F.2d at 686. In addition, under the Establishment Clause, the government is prohibited from favoring one religion over another without a legitimate secular reason. *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005) (finding that prison officials who failed to offer any reason why a meeting of atheist inmates posed a greater security risk than meetings of different religious groups were not entitled to summary judgment on a claim under the Establishment Clause).

Plaintiff claims that Defendants deprived him of his right to freely exercise his religion in violation of the First Amendment when they adopted policies that denied him the ability to practice his sincerely held religious beliefs. Plaintiff further contends that Defendants violated the Establishment Clause when they adopted a policy that made it more difficult for inmates who

identify as Orthodox Jews to exercise their religion than inmates who identify with other religious faiths.[2]

But the gravamen of Plaintiff's complaint is that Defendants denied him the right to freely practice his religion because they refused to recognize him as Jewish. To determine whether an inmate's particular religious beliefs are entitled to protection under the First Amendment, the test is "whether the beliefs professed by the [claimant] are *sincerely held* and whether they are, in his own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 185 (1965). As the United States Supreme Court has repeatedly reiterated, "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714, 101 S. Ct. 1425, 1430, 67 L. Ed. 2d 624 (1981)

To be sure, the question is not whether the claimant is a recognized member of a particular faith or even whether the claimant's belief is recognized by religious authority as central to the practice of that particular faith. Instead, it is a subjective test; the inquiry centers on the sincerity of the individual's religious beliefs: "A person's religious beliefs are personal to that individual; they are not subject to restriction by the personal theological views of another." *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009) (citing *McCreary County, Ky. v. Am. Civil Liberties Union of Ky.,* 545 U.S. 844, 875–76 (2005).

The fact that the prison, a state entity, relies on Defendant Scheiman to determine who is Jewish and, therefore, eligible to use tefillin is troubling. Outside the walls of prison, a rabbi, or any other religious leader, may be anointed gatekeeper and charged with the task of determining who is and is not a member of his or her religious community with impunity and without fear of

---

[2] Specifically, Plaintiff argues that inmates who use rosary beads as part of their prayer ritual are not required to receive instructions from a priest before being granted permission to use them. Whether this is in fact true remains to be seen.

interference from the State, so long as the religious leader is not a state actor. But when religious leaders don the cloak of the State, they must abide by the tenets of our Constitution, which protect against governmental intrusion on individual religious liberty.

Plaintiff asserts claims against Defendants in their individual and official capacities, but state officials may not be sued for monetary damages in their official capacity in federal court. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). However, under 42 U.S.C. § 1983, a state official sued in his individual capacity may be held liable if he "caused or participated in a constitutional deprivation." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994) (citing *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)); *see also Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005). Typically, an official who rules "against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a *completed act of misconduct* does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (emphasis added). In other words, the official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye...." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (citations omitted).

The facts recited in the complaint suggest that each Defendant was either personally involved in the alleged constitutional violations or was adequately notified of the *ongoing* constitutional violations and chose to "turn a blind eye." Therefore, Plaintiff may proceed on his claim for monetary damages against all Defendants, in their individual capacities, at this time.

In addition, because Plaintiff is seeking injunctive relief, the Clerk shall be directed to add the Menard Warden (in her official capacity) and the Director of the Illinois Department of Corrections (in his official capacity) as Defendants in this action for purposes of injunctive relief.

Because Plaintiff seeks to enjoin state-wide policies, as well as policies and practices adopted at the facility level, both the Warden and the Director are proper Defendants. *See* Fed. R. Civ. P. 21; Fed. R. Civ. P. 17(d);[3] *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Count 2:     Defendants violated Plaintiff's right to freely exercise his religion under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")**

Plaintiff also claims that Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1(a)) ("RLUIPA"). Congress enacted RLUIPA "in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 2751, 2760 (2014). RLUIPA has been interpreted as conferring even "greater religious rights on prisoners than the free exercise clause." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see generally Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 2751 (2014); *Holt v. Hobbs*, 135 S. Ct. 853 (2015).

However, RLUIPA does not provide a cause of action for money damages against officials in their individual capacity, *see Nelson v. Miller,* 570 F.3d 868, 886-89 (7th Cir. 2009), or official capacity, *see Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011). Therefore, Plaintiff may not pursue a claim for damages against any Defendants under RLUIPA. However, Plaintiff may proceed on his claim for injunctive relief under RLUIPA against the Menard Warden and the Director of the Illinois Department of Correction for the same reasons discussed above.

---

[3]  Federal Rule of Civil Procedure 21 states in pertinent part: "On motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 17(d) provides: "A public officer who . . . is sued in an official capacity may be designated by official title rather than by name, but the court may order that the officer's name be added."

**Count 3:    Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment**

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'" *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir. 1987), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir. 1982)).

Plaintiff alleges that he was treated differently from similarly-situated individuals who use religious items as part of their religious practice. Specifically, he suggests that individuals who pray with rosary beads are not required to receive instructions from a priest prior to using the beads. At this stage, the Court cannot determine whether that is in fact true. But Plaintiff has stated sufficient facts to support his equal protection claim against Defendants. Plaintiff may proceed on this claim against all Defendants, in their individual capacities; he may also proceed on his claim for injunctive relief against the Menard Warden and the Director of the Illinois Department of Corrections for the same reasons discussed under Count 1.

**Claim to be Dismissed**

**Count 4:    Defendants violated Plaintiff's right to freely exercise his religion under the Illinois Religious Freedom Restoration Act ("IRFRA")**

Plaintiff additionally claims that Defendants violated his statutory rights under the Illinois Religious Freedom Restoration Act ("IRFRA). 775 Ill. Comp. Stat. 35 § 15. IRFRA, like RLUIPA, provides that the government may not "substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." *Id*.

Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). Although the facts supporting the claim under IRFRA are nearly (if not entirely) identical to the facts related to the RLUIPA claim, it appears that both individual-capacity and official-capacity IRFRA claims lie beyond the jurisdiction of this court. A suit against a public employee in his official capacity is a suit against the state, and the Illinois Court of Claims has "exclusive jurisdiction of all claims" against the state founded upon any law of the State of Illinois. *See Nelson v. Miller,* 570 F.3d 868, 885 (7th Cir.2009); 705 ILCS 505/8(a). Likewise, federal district courts have barred individual-capacity IRFRA claims, holding that IRFRA claims against state employees are in effect claims against the state. *See Wilkins v. Walker*, 2012 WL 253442, at 3 (S.D. Ill. Jan. 26, 2012) (collecting cases). As such, the Court will dismiss this claim without prejudice. Plaintiff may refile these claims in the Illinois Court of Claims.

In summary, Plaintiff shall be allowed to proceed on Count 1 (First Amendment claim) and Count 3 (Fourteenth Amendment equal protection claim) against all Defendants in their individual capacities. He shall also be allowed to seek injunctive relief on Count 1 (First Amendment claim), Count 2 (RLUIPA claim), and Count 3 (Fourteenth Amendment claim) against the Menard Warden and the Director of the Illinois Department of Corrections, in their official capacities. The claim arising under IRFRA (Count 4) will be dismissed without prejudice.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to a United States

Magistrate Judge and addressed in a separate order.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's claim for damages against Defendants **GODINEZ, KEIM, BUTLER, HARNER, SCHEIMAN, JOHN DOE #1,** and **JOHN DOE #2** on **COUNTS 1 and 3** shall proceed.

**IT IS FURTHER ORDERED** that the Clerk shall add Defendants **MENARD WARDEN** and **DIRECTOR OF ILLINOIS DEPARTMENT OF CORRECTIONS** in their official capacities for purposes of injunctive relief on **COUNTS 1, 2, and 3**.

**Count 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **GODINEZ, KEIM, BUTLER, HARNER, SCHEIMAN, MENARD WARDEN** and **DIRECTOR OF ILLINOIS DEPARTMENT OF CORRECTIONS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the remaining John Doe Defendants (**JOHN DOE #1** and **JOHN DOE #2**) until such time as Plaintiff has identified these John Doe Defendants by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility

to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that

his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 10, 2015**

*s/J. Phil Gilbert*
United States District Judge